

**FILED**
March 15, 2024 08:06 AM
ST-2014-CV-00513
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
\*\*\*\*

| | |
|---|---|
| GOURMET GALLERY CROWN BAY, INC., and ZAKARIA SUID, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CROWN BAY MARINA, L.P., )<br><br>Defendant. )<br>_____ )<br><br>CROWN BAY MARINA, L.P., )<br><br>Counterclaimant, )<br><br>v. )<br><br>GOURMET GALLERY CROWN BAY, INC., and ZAKARIA SUID, )<br><br>Counterclaim Defendants. ) | **CASE NO. ST-2014-CV-00513**<br><br>**ACTION FOR DECLARATORY JUDGMENT, INJUNCTION, REFORMATION, RESCISSION, ESCROW OF RENT, AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

CAMPBELL C. RHEA, ESQUIRE (Zimmer & Rens, LLC), Brookfield, WI, and GORDON C. RHEA, ESQUIRE of (Gordon C. Rhea, P.C.), St. Thomas, VI, and JOSEPH B. ARELLANO, Esquire (Arellano & Associates), St. Thomas, USVI, *for the Plaintiffs/Counterclaim Defendants.*

RAVINDER S. NAGI, ESQUIRE and ADAM N. MARINELLI, ESQUIRE (of BOLTNAGI PC), St. Thomas, USVI, for the *Defendant/Counterclaimant.*

Cite as 2024 Super 13U

## MEMORANDUM OPINION ORDER

¶1 Pending before the Court are:

1. Plaintiffs' Motion and Memorandum of Law in Support of Emergency Motion for Issuance of a Preliminary Injunction and a Permanent Injunction, filed June 6, 2017;

2. Plaintiffs' Motion Requesting Ruling on Plaintiffs' Emergency Motion for Issuance of a Preliminary Injunction and Permanent Injunction, filed December 3, 2018;

3.      Defendant's Response to Plaintiffs' Motion Requesting Ruling on Plaintiffs' Emergency Motion for Issuance of a Preliminary Injunction and Permanent Injunction, filed December 18, 2018; and

4.      Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion Requesting Ruling on Plaintiffs' Emergency Motion for Issuance of a Preliminary Injunction and Permanent Injunction, filed January 3, 2019.

¶2      Previously, this Court denied Plaintiffs Gourmet Gallery and Zakaria Suid's (herein referred to collectively as "Gourmet") Motion for Preliminary Injunction filed in 2014, finding that, although Gourmet was able to demonstrate a likelihood of success on the merits,[1] it was not in danger of irreparable harm and injunctive relief was not in the public interest. Gourmet seeks to prohibit the sale of certain items by tenants of Crown Bay Marina. Given that Gourmet's instant Motion for Preliminary and Permanent Injunction before the Court contains similar arguments based on similar premises as its previous unsuccessful Motion – some of which are now rendered moot – it will be denied and a combined trial and hearing on the merits of the Motion for Permanent Injunctive Relief has been scheduled.[2]

## I.      BACKGROUND

¶3      This matter has been pending for over nine years and involves a variety of disputes between a commercial landlord, Crown Bay Marina ("CBM"), and its tenant, Gourmet Gallery. [3] On or about June 7, 1991, Gourmet Gallery and Crown Bay Marina Joint Venture-I entered into a Lease. CBM is the successor in interest to Crown Bay Marina Joint Venture-I.[4] The Lease provided that CBM, as Landlord, would lease space at Crown Bay Marina to Tenant Gourmet Gallery in exchange for period payments of rent and other charges. Zakaria Suid is the President and Chief

---

[1] In order to show a reasonable probability of success on the merits, a party need not show that it will actually prevail on the merits at trial, or that success is "more likely than not," but only that there exists a reasonable chance, or probability, of winning. *See Yusuf v. Hamed*, 59 V.I. 841, 849 (2013); *see also Sam's Food Distribs., Inc. v. NNA&O, LLC*, 73 V.I. 453, 454 (2020) ("Unlike a preliminary injunction, which requires only a showing of probability of success on the merits, to obtain a permanent injunction, the moving party must demonstrate actual success on the merits of the claim.").

[2] In its Reply brief for the instant Motion, Gourmet requested an evidentiary hearing pertaining to its requests for Declaratory Judgments (Gourmet's Reply at 10, Jan. 3, 2019), however, it later stated that the matter was "ripe for ruling" because the Court is "fully apprised" of the parties' "positions on all matters related to the two counts for Declaratory Judgments," "the issues have been fully briefed," and the Court "has all the information required to rule." (Pl.'s Reply to Def.'s Resp. to Pls.' Second Req. for Ruling, Issuance of a Decl. J., & Enforcement of Orders at 8, 9, 18 (Dec 23, 2021)).

[3] CBM's Answer Pls.' First Am. Compl., Affirmative Defenses & Countercl. at 7 (June 19, 2017).

[4] Def.'s Answer Pls.' Second Am. Compl., Affirmative Defenses, & Countercl. ¶7 (Aug. 13, 2021).

Executive Officer of Gourmet Gallery.[5] On November 5, 2014, Gourmet filed its initial Complaint alleging that CBM was in breach of the exclusivity clause of their lease agreement due to the opening of a new ice cream parlor – Scoops and Brew ("S&B"). Gourmet contends that particular goods sold by S&B constitute "groceries" within the meaning of the Lease Agreement, and the Lease Agreement prohibits CBM from leasing space in Crown Bay Marina to another tenant that sells groceries.[6]

¶4      Gourmet filed a Motion and Renewed Motion for Preliminary Injunction on November 7, 2014, and January 29, 2015, respectively, petitioning this Court to close S&B. The Motions were denied, and Gourmet appealed. The Virgin Islands Supreme Court affirmed this Court's decision, finding that, although Gourmet was able to demonstrate a likelihood of success on the merits, it was not in danger of irreparable harm, and the public interest would be best served by allowing S&B to remain open.[7] In so affirming, the V.I. Supreme Court considered the parties' lease which contained a restrictive covenant that, with some exceptions, gave Gourmet the exclusive right to sell certain items on CBM's property. Those items

> include, but [are] not necessarily limited to, the following merchandise:
> - Gourmet cooking oil and spices
> - Wine, beer, liquor, sodas
> - Deli and bakery
> - Fresh and frozen meat
> - Tobacco products
> - Magazines and newspapers
> - High quality canned and bottled products (e.g. gourmet jellies and vegetables)
> - Fresh pastas
> - Custom order department (i.e. charter yacht provisioning)[.]

The covenant continues:

> Tenant and Landlord hereby agree that Landlord is not providing Tenant with any exclusive right to the sale of the above described merchandise except that, as long as Tenant provides such goods and services with displays and inventories appropriate to Tenant's Crown Bay Marina, Landlord agrees to not lease space in the marina for a store which shall carry groceries, liquor, produce, drugs, delicatessen, fish and meat or the items listed above.

Finally, the covenant provides three exceptions, which allow CBM to lease its property to the following:

---

[5] Pls.' Second Am. Compl. ¶2a. (July 29, 2021).

[6] Pls.' Mem. Law Supp. Pls.' Renewed Mot. Prelim. Inj. 1-2 (Jan. 29, 2015).

[7] Order (Nov. 11, 2015); *Gourmet Gallery Crown Bay. Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584 (2018).

> (a) A hotel operator that shall, as part of its services, sell food, sundries and bottled liquor to hotel guests for "in-room" consumption;
>
> (b) Any tenant who shall operate its leased premises as a bar or restaurant; and
>
> (c) Tenants that carry specialty packaged food products or liquor as novelty or gift items, so long as such products shall not represent a principal part (in excess of 30%) of its overall inventory.

The lease agreement does not define the terms "grocery," "groceries," "store," or "restaurant."

On September 1, 2014, S&B entered into a lease agreement with CBM to rent a 200-square foot Gazebo located approximately thirty feet from the front entrance of Gourmet Gallery.[8]

¶5     The lease agreement between CBM and S&B states that the permitted use of the premises leased by S&B is as an "ice cream parlor," selling "specialty coffee, logo merchandise, [and] prepared food items."[9] S&B's business license in 2014 showed it licensed as a "coffee shop and ice cream parlor."[10] S&B sells milkshakes, a variety of baked goods, boxes of brand-name tea, various snack bars, soft-serve ice cream, regular and vegan gelato, at least seven flavors of sorbet, and various brews of prepared coffee (*e.g.*, Americano, cappuccino, latte, mocha, chai tea, affogato.)[11]

¶6     In September 2014, Suid sent a letter to Dennis Kissman, President of CBM's Marina Management Services, expressing his opposition to S&B's lease. Suid emphasized an amendment to Gourmet's lease that he had signed with CBM the week prior, which required him to invest $500,000 in capital improvements as a condition of exercising a six-year option under the amendment. Suid noted that, during the amendment negotiations, and on three prior occasions, he had expressed his intention to establish a 'full-service coffee shop within Gourmet Gallery.[12] Suid

---

[8] *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68, V.I. 584, 587-588 (V.I. 2018).

[9] Crown Bay Marina Commercial Space Lease Agreement, Prelim. Inj. Hrg. Joint Ex. 9 at 2.

[10] Order & Mem. Op. at 3 (Nov. 10, 2015). In 2018, S&B's business license categorized S&B as a "Coffee Shop & Ice Cream Parlor, Delicatessen, Tavern, and Tavernkeeper A." *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584 (2018). As of the date of the instant Order, Department of Licensing and Consumer Affairs (DLCA) lists S&B's license type as "Coffee Shop & Ice Cream Parlor, Tavern, Tavernkeeper A (Distilled & Fermented."

https://secure.dlca.vi.gov/license/Asps/Search/SearchResultsnew.aspx?BusName=&LocAddress=&LicType=&Bus Activity=&LicenseNo=&Island=&SearchText=scoops%20&%20brew (last visited Feb. 23, 2024).

[11] *See* Def.'s Opp'n Pls.' Renewed Mot. Prelim. Inj. Ex. A (purporting to be copies of photographs of the interior of S&B displaying various items offered at S&B) (Feb. 13, 2015).

[12] 68 V.I. at 589.

also reminded CBM that over the previous several months he offered to take over the gazebo and to pay rent for the premises and reiterated his offer in the letter.[13] CBM responded to Suid's letter through counsel in a letter dated October 8, 2014, claiming that S&B was not going to sell any items Gourmet currently offered, and that Gourmet did not have the exclusive right to sell the items S&B would offer.[14]

¶7      The Superior Court held an evidentiary hearing in May 2015, where Kosei Ohno, president of CBM, "testified that part of the reason Suid and CBM negotiated the new amendment was because Suid had been delinquent for the previous three years, and had accumulated a rental arrearage balance of approximately $100,000.[15]

¶8      At the hearing, Suid testified that CBM had approached him in 1991 about opening a second Gourmet Gallery store at the Marina, and that the restrictive covenant was a condition upon which Suid agreed to sign the lease.[16] Because Gourmet's lease does not define the relevant terms "grocery," "groceries," and "restaurant," the parties gave conflicting testimony disputing whether S&B is a "restaurant," and whether the items S&B sells are "groceries," as contemplated within the contours of the restrictive covenant.[17]

¶9      On November 5, 2014, Gourmet filed a complaint with the Superior Court, alleging that it is entitled to: (1) a preliminary and permanent injunction either enjoining CBM from leasing to S&B, or requiring S&B to sell items other than those that Gourmet sell; (2) a declaratory judgment that CBM breached its lease with Gourmet and that Suid is not obligated to invest the $500,000 in capital investments previously agreed upon; (3) an order reforming or rescinding Suid's personal guarantee of the $500,000; (4) an order permitting Gourmet to escrow rent pending litigation; (5) a declaratory judgment, and a preliminary and permanent injunction allowing Gourmet to audit common area expenses and charges CBM imposed upon the store; and, (6) nominal, compensatory, and consequential damages. S&B was never made a party to this action. Gourmet filed a Second Amended Complaint in 2021 that added a petition for a Declaratory Judgment alleging CBM breached the Lease Agreement by refusing to repair Gourmet Gallery's roof.[18]

¶10      Since the Superior Court's denial of Gourmet's Motion in 2015 and the Supreme Court's decision to affirm in 2018, the impact of two category five hurricanes in 2017 – and a subsequent worldwide pandemic – have taken their toll on the landscape of this case. Gourmet Gallery closed

---

[13] *Id.* at 589.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 590.

[17] *Id.*

[18] Pls.' Second Am. Compl. ¶¶70, 71 (July 29, 2021).

its doors to business due to hurricane damage and the enduring impasse between the parties. The instant Motion for Preliminary Injunction was filed just a few months after Gourmet Gallery closed.[19]

¶11    Although Gourmet Gallery remains closed as of the date of this order, Gourmet has expressed that it would like to reopen Gourmet Gallery.[20] It asserts CBM intentionally prevents Gourmet Gallery from reopening by refusing to make repairs to the property.[21] For its part, CBM alleges that because Gourmet failed to fulfill its obligations under the parties' Lease Agreement, the Lease has expired by its own terms, and that Gourmet is a holdover tenant.[22]

## II.    LEGAL STANDARD

¶12    A preliminary injunction is "an extraordinary and drastic remedy" awarded only "upon a clear showing that the plaintiff is entitled to such relief."[23] In contrast to legal remedies such as money damages, injunctive relief is an equitable remedy.[24] Pursuant to Rule 64 of Virgin Islands Rules of Civil Procedure, the Court may issue a preliminary injunction upon notice to the adverse party.[25]

¶13    The Court considers four factors in ruling on a motion for preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary injunction relief will result in even greater harm to the nonmoving party; and (4) whether granting

---

[19] The Court stayed Gourmet's previous Motion for Preliminary Injunction filed June 6, 2017 – pre-hurricanes – because of its similarity to the petition that was before the Virgin Islands Supreme Court at the time. "The V.I. Supreme Court's review of the Court's Memorandum opinion and Order dated November 10, 2015, involves issues too similar to those presented in Plaintiffs' present motion for injunctive relief." Order granting stay at 4. (Dec. 11, 2017).

[20] Pls.' Second Am. Compl. ¶55 (July 29, 2021) ("Plaintiffs wish to reopen a soon as possible. . . ."); Pls.' Reply Def's Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 10 ((Jan 3, 2019) ("Plaintiffs hope to reopen as soon as possible.").

[21] Gourmet filed its Second Amended Complaint on July 29, 2021, adding Count VI's allegation of breach of contract based on CBM's refusal to repair the property's roof after damage from the 2017 hurricanes.

[22] Def.'s Answer Pl.'s Second Am. Compl., Affirmative Def.'s, and Counterclaims ¶¶ 26-27, 32, 45-46 (Aug. 12, 2021). CBM filed an action of ejectment asserting that Gourmet is a holdover tenant (¶ 46) and that CBM "demanded in writing that Gourmet vacate the premises pursuant to CMB's Notice to Quit and Notices of Intent to Enforce Landlord's Lien." (¶ 47); CBM further asserts that "Gourmet Gallery failed to comply with the terms and conditions of the Lease Documents and is in default for failing to pay principle, interest, and CAM charges due." (¶32); CBM also alleges that Gourmet Gallery failed to exercise its Lease Extension Option prior to the expiration of the Lease on January 31, 2016, and that it failed to complete "minimum Capital Improvements" as agreed upon in the Fifth Amendment. (¶¶ 26-27).

[23] *Yusuf v. Hamed*, 59 V.I. 841, 847 (2013).

[24] *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 545 (2015).

[25] V.I. R. Civ. P. 65(A)(1).

the preliminary relief will be in the public interest.[26] The four factors must be evaluated "under a sliding scale standard."[27] The moving party must "demonstrate that the injunction is necessary to avoid certain and imminent harm for which a monetary award does not adequately compensate."[28] However, irreparable injury alone is not enough to support equitable relief. The moving party must also make at least some showing that it has a reasonable probability of success on the merits.[29]

## III.   ANAYLSIS

**¶14**     CBM argues that a ruling on Gourmet's Emergency Motion for Preliminary Injunction would have little practical effect because Gourmet Gallery has been closed since 2017 and because the Motion is rendered moot under the "Mootness Doctrine. " CBM also maintains that Gourmet has not demonstrated irreparable harm and that no emergencies exist because Gourmet is no longer open for business. CBM further argues Gourmet is precluded from litigating the instant Motion under the doctrine of collateral estoppel.

### A.  Mootness Doctrine

**¶15**     CBM argues that the underlying subject matter of Gourmet's "emergency" request for a preliminary injunction concerned only the ongoing alleged financial impact of the operation of S&B's sales upon Gourmet Gallery's sales.[30] In support, CBM cites *Der Weer v. Hess Oil Virgin Islands Corp.*[31] A motion becomes moot, according to *Der Weer*, "when something occurs after a motion is filed that resolves the issues raised in that motion."[32] "In general, a motion is still pending

---

[26] *3RC & Co.*, 63 V.I. at 550.

[27] *Id.*

[28] *Id.* at 554 (2015) (internal quotation omitted).

[29] *Id.* at 555.

[30] Def's Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 4. (Dec 18, 2018); Def./Countercl.'s Resp. Pls.' Second Request Ruling, Issuance Declaratory J., & Enforcement of Orders at 7 (Dec. 10, 2021).

[31] *Der Weer v. Hess Oil Virgin Islands Corp.*, 60 V.I. 91, (Super. Ct. 2014) ("A motion is moot when a court is unable to fashion any form of meaningful relief") (citations omitted). In *Der Weer*, Plaintiff estate filed a wrongful death action against defendant companies in which plaintiff alleged that defendants were responsible for exposing the decedent to asbestos and other toxic substances. One defendant filed a motion to strike plaintiff's claim for punitive damages, and other defendants joined in the motion. Plaintiff and one defendant both agreed that that particular defendant's motion to strike punitive damages had become moot and the parties resolved their dispute amicably. The motion remained pending, however, as to two other defendants which had joined the motion and had not been dismissed. Furthermore, the fact that the court denied a motion to strike punitive damages in another case did not render the motion in the present case moot, and the other case was distinguishable because it involved a survival claim. *Id.* at 93.

[32] *Der Weer v. Hess Oil Virgin Islands Corp.*, 60 V.I. 91, 99 (Super. Ct. 2014).

if it has not been ruled on, dismissed or resolved." [33] Black's Law Dictionary defines moot as "[h]aving no practical significance; hypothetical or academic."[34]

**¶16**     Gourmet's motion has not been ruled on, dismissed, or resolved. Therefore, because the motion is still pending, the Court must determine whether it has become moot. The Court finds *Der Weer* distinguishable from the instant case. The Court in *Der Weer* found a motion to strike was moot where the relevant parties had settled and conceded that the motion was moot. The motion was not moot, however, for other parties that had joined the motion but had not yet settled. In the instant matter, only CBM raised the mootness issue and Gourmet is far from conceding.

**¶17**     According to the Virgin Islands Supreme Court, "[t]he central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of litigation has forestalled the prospect for meaningful relief."[35] Although Gourmet shut its doors for business at Crown Bay Marina three months after filing the instant Motion in 2017, Gourmet argues that it retains a viable lease with CBM and that it is eager to reopen as soon as possible.[36] Gourmet avers that it has not remained closed by choice, but rather because of CBM's intentional refusal to repair hurricane damage allegedly in violation of the parties' Lease.[37] Gourmet further argues that the instant Emergency Motion filed in 2017 while it was still open "sought judicial intervention to prevent [CBM] from allowing competing businesses in Crown Bay Marina from selling items in violation of Gourmet's exclusivity clause."[38] Gourmet contends that it was "fully operational and seeking to protect its rights under the Lease" but was purposely forced to "shutdown indefinitely against its will" because CBM refused to repair roof damage, which Gourmet alleges is "a breach of the Lease that continues to this day."[39] CBM, on the other hand, asserts that Gourmet is no longer a welcome tenant because it breached its contractual obligations well before the hurricane damage ever occurred to the property. CBM further asserts that because the parties' Lease

---

[33] *Id.* at 98 (citing 56 Am. Jur. 2d *Motions, Rules, and Orders* § 31 (2010)).

[34] Moot, Black's Law Dictionary (11th ed. 2019).

[35] *Virgin Islands Taxi Ass'n v. Virgin Islands Port Auth.*, 67 V.I. 643, 663 (2017); *accord, Sekou v. Moorhead*, No. SX-16-CV-071, 2016 V.I. LEXIS 73, at *5-6 (Super. Ct. June 10, 2016) ("A matter before the Court is deemed moot, "when there is no issue between parties that can be resolved by the court.").

[36] Pls.' Second Am. Compl. ¶55 (July 29, 2021) ("Plaintiffs wish to reopen a soon as possible. . . ."); Pls.' Reply to Def's Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 10 ((Jan 3, 2019) ("Plaintiffs hope to reopen as soon as possible").

[37] Pls.' Reply Def's Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 4 (Jan 3, 2019).

[38] Pl.'s Reply Def.'s Resp. Pl.'s Second Request Ruling, Issuance Declaratory J. & Enforcement Orders at 10, 11 (Dec 21, 2021).

[39] *Id.*

Agreement has expired, Gourmet is no longer entitled to options for extending the Lease Agreement.[40]

¶18     Clearly changes have transpired "in the circumstances that prevailed at the beginning of litigation," but unlike the scenario for particular parties in *Der Weer*, it is not a fait accompli that "the prospect for meaningful relief" is now thwarted. Gourmet could still reopen its doors as a viable tenant since a jury will decide the merits of the restrictive covenant and whether CBM first breached the parties' lease by permitting S&B to sale the particular items contested by Gourmet. Notwithstanding, the Court must balance this hypothetical reality with the principle that "an injunction cannot be broader than necessary to restrain the unlawful conduct complained of, and that "a court issuing an injunction must ensure that it is narrowly tailored to fit the particular circumstances of the case."[41]

¶19     Another consideration is that the mootness doctrine in the Virgin Islands is "a non-jurisdictional claims-processing rule that has been incorporated into Virgin Islands law only as a matter of judicial policy."[42] It functions in the courts of the Virgin Islands as a claims processing rule that is subject to waiver should the party asserting the issue fail to raise it in a timely manner.[43] Gourmet filed the instant Emergency Motion for injunctive relief before the Virgin Islands Supreme Court affirmed denial of its initial 2014 Emergency Motion[44]—about three months before the 2017 hurricanes forced Gourmet Gallery to close for business.[45] CBM waited four years to raise the issue in December 2021, and only in its response to Gourmet's Second Request for

---

[40]The expiration of a contract generally moots claims for injunctive relief with respect to that contract. *See, e.g., ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013)* ("It is ordinarily true that a challenge to a contract becomes moot upon that contract's expiration… (citations omitted)); Commer v. Dist. Council 37, No. 94 CIV. 8462 (DAB), 2003 U.S. Dist. LEXIS 12454, at *17 , 2003 WL 21692816, at *5 (S.D.N.Y. July 21, 2003) (finding a plaintiff's claim for injunctive relief to be moot where the challenged contract expired and the plaintiff did not amend his complaint to encompass any present or future contract), aff'd, 96 Fed. Appx. 777 (2d Cir. 2004).

[41] *V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643, 665 (2017) (citing *Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 700 (V.I. 2011)) (citations omitted).

[42] *Mapp v. Fawkes*, 61 V.I. 521, 530, 2014 WL 6237520, at *4 (V.I. 2014) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012) and *Vazquez v. Vazquez*, 54 V.I. 485, 489 n.1 (V.I. 2010)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ("Non-jurisdictional 'claim-processing rules' are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.").

[43] *See Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 564-65 (2012). In *Benjamin,* R.W. became eighteen in February 2009, while the case was being actively litigated before the Superior Court. Despite that fact, the defendant waited until the case was on appeal nearly two years later to raise the issue of standing. Because of the unexplained delay in raising the potential standing issue, the Court found the defendant waived any argument based on Benjamin's standing; *see also In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010) ( "[A] litigant may waive its right to have a court apply a judicially created standing doctrine by not timely asserting that right.").

[44] Gourmet also filed a Renewed Motion for Preliminary Injunction in 2015.

[45] The Superior Court stayed Gourmet's 2016 Motion for Preliminary Injunction pending the Supreme Court's decision on Gourmet's previous Motion for injunctive relief. After the Supreme Court ruled on the matter in 2018, Gourmet filed the instant renewed motion for injunctive relief.

Ruling, Issuance of Declaratory Judgment and Enforcement of Orders.[46] Although the Court finds CBM's argument compelling, CBM failed to raise the matter in a timely matter. Accordingly, the issue of mootness is waived and does not preclude the Court from considering Gourmet's pending Motion.

## B. Collateral estoppel

¶20     "To bar relitigation of an issue under the doctrine of collateral estoppel, an asserting party must demonstrate: (1) the issue to be barred is identical to an issue actually and necessarily decided in the prior action; (2) the prior action was adjudicated in a decision that was final, valid, and on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action."[47]     Also known as issue preclusion, collateral estoppel is premised on "promoting judicial economy and efficiency, the stability of final judgments, and fairness to litigants."[48]

¶21     CBM argues that Gourmet's Motion at bar should be denied under the doctrine of collateral estoppel or issue preclusion, because "the exact same issue involving the same parties and based on the same leasehold provisions and theory of recovery already was decided by the V. I. Supreme Court" when it affirmed this Court's denial of Gourmet's previous Motion for  Preliminary Injunction.[49] CBM maintains that Gourmet's latest motion is simply "a reiteration of their prior Request for Preliminary Injunction, but with  more specific details about alleged 'quantifiable' damages." [50]

¶22     Countering, Gourmet contends that the instant Motion for Preliminary Injunction is different because the previous Motion dealt with only two grocery items and whether CBM could

---

[46] Def./Countercl.'s Resp. Pls.' Second Request Ruling, Issuance Declaratory J., & Enforcement of Orders at 5 (Dec. 10, 2021).

[47] *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 522 (2017); *cf. Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 67 (Super. Ct. 2016) ("The collateral estoppel doctrine, also commonly known as issue preclusion, can be broken down into four elements: (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was decided in a decision that was final, valid, and on the merits; and (4) the party being precluded from re-litigating the issue was adequately represented in the previous action.").

[48] *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 547 (2017); *see also Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 74 (Super. Ct. 2016) (citing *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)) ("This doctrine reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves resources, and encourages reliance on adjudication.").

[49] Def.'s Resp. Pl.'s Mot. Requesting Ruling Pl.'s Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 2. (Dec. 18, 2018).

[50] Def.'s Resp. Pl.'s Mot. Requesting Ruling on Pl.'s Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 3. (Dec. 18, 2018).

permit S&B to sell these items. [51] Gourmet argues that the instant Motion, on the other hand, is broader in scope since it includes "multiple grocery items" being sold by multiple tenants in the Marina. Gourmet also argues that it seeks "entirely different" remedies as it previously sought to close S&B and now only seeks to prohibit sales of certain items at the Marina.[52]

¶23    Specifically, Gourmet contends that the instant Motion is distinguishable because 1) CBM allows S&B to sell additional groceries and has allowed an additional tenant–Your Choice Laundry – to sell groceries; 2) CBM's classification of the goods sold at S&B has changed since S&B now sells bagged coffee and prepackaged ice cream, which S&B did not sell previously— items CBM conceded would be considered "groceries;" 3) S&B now sells canned beer and canned sodas— items that the Lease Agreement specifically prohibits by name; and 4) now CBM also sells sodas and juices via a vending machine at the Marina.[53]

¶24    Gourmet interprets the issues of fact and law too narrowly.[54] When Gourmet filed the instant Motion in 2017, its appeal of the denial of its first Motion for Preliminary Injunction was still pending before the V.I. Supreme Court. CBM moved for a stay and this Court granted the stay finding the questions presented regarding damages were "at best exceedingly similar and at worst identical" to those pending before the Supreme Court on Gourmet's appeal."[55] This Court stands by this previous finding. The dispute over newly added items and additional tenants poses the same questions as to whether Gourmet's "injuries can be adequately repaired by monetary damages."[56] Furthermore, the introduction of an additional third party – Your Choice Laundry –does not cause the instant Motion to be distinguishable from Gourmets' prior Motions for injunctive relief filed in 2014 and 2015, because as a preliminary matter, Your Choice Laundry was not involved in the original complaint, and Virgin Islands courts have held that a party may not assert a claim not pleaded in a complaint or counterclaim.[57] Likewise, changing the severity of remedy relief does not distinguish the latest motion from the earlier, because the Court would have to rule on questions of fact and law, such as the definition of 'groceries" and whether Gourmet can show irreparable injury due to lost sale opportunities, before it could issue an injunction of any severity.[58]

---

[51] The two items were coffee and ice cream. Pls.' Reply Def.'s Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 2 (Jan. 3, 2019).

[52] Pls.' Reply Def.'s Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 2 (Jan. 3, 2019).

[53] Mot. & Mem. Law Support of Emergency Mot. Issuance of Prelim. Inj. & Permanent Inj. at 4-6 (June 6, 2017).

[54] Order at 2 (Dec. 11, 2017).

[55] Order at 2, 3 (Dec. 11, 2017).

[56] *Id.*

[57] *See, e.g. Marsh Monsanto.v. Clarenbach*, 66 V.I. 366, 382 (V.I. 2017) (addressing a motion for summary judgment).

[58] This Court held that the questions of whether S&B sells "groceries" within the meaning of the Lease Agreement and whether S&B is considered a "restaurant" within the meaning of the Lease Agreement represent questions of fact for a jury. Order at 4 (Dec. 11, 2017). *See also Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, No. ST-2014-CV-513, 2015 V.I. LEXIS 141, at *14 (Super. Ct. Nov. 10, 2015) (determining that the question of whether

¶25    Gourmet argues that collateral estoppel does not apply here because the "issue of ultimate fact" has not yet been addressed by a court.[59] This contention is problematic for two reasons.

¶26    First, Gourmet cites *Greene v. V.I. Water & Power Authority* for support, however, the Court in *Green* addressed collateral estoppel as applied to a motion for summary judgment—not a Motion for Preliminary Injunction as is the case in the instant matter. [60] The considerations required for summary judgment do not apply in the Rule 65 context because a preliminary injunction only has the effect of maintaining the positions of the parties until the trial can be held; the order neither replaces the trial nor represents an adjudication of the merits.[61] The purpose of the summary-judgment procedure, on the other hand, is "to dispose of a case without a trial when there is no genuine issue of material fact and one party is entitled to a judgment as a matter of law." [62]

¶27    Second, Gourmet conflates the "issue of ultimate fact" associated with the merits of its Motion and the "issue of ultimate fact" associated with the underlying merits of the case at bar. Wright & Miller provides the following explanation in its treatise on federal practice and procedure:

> Grant or denial of interlocutory injunctions clearly does not foreclose further litigation in the same proceeding, so long as decision rested on mere preliminary estimates of the merits or discretionary remedial grounds. By the same token, interlocutory injunction rulings commonly lack preclusive effect in other proceedings. All that has been decided is whether preliminary relief is warranted in light of educated guesses as to the outcome on the merits and the balance of hardships. Even if the same matters arise again in a similar interlocutory setting, preclusion should be defeated if there is a reasonable prospect that a different preliminary showing can be made on the merits or on the balance of hardships. *Preclusion may properly be applied, however, if the same showings are made and*

---

S&B sells groceries within the meaning of the Lease Agreement is a determination for the trier of fact) (citing *United Corp. v. Tutu Park, Ltd*, 55 V.I. 702, 716-20 (V.I. 2011)) (holding that the definition of the term "supermarket" was a question of fact for the jury when the parties had advance competing interpretations of the term).

[59] Pls.' Reply to Def.'s Resp. to Pls.' Mot. Requesting Ruling on Pls.' Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 2, 3 (Jan. 3, 2019).

[60] "Collateral estoppel requires that there be a final judgment that is subject to appeal. It is well-established that, subject to few exceptions, an order denying a motion for summary judgment is an interlocutory order not subject to appeal until a final order is issued." *Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 67 (Super. Ct. 2016).

[61] *See Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 75 (Super. Ct. 2016) ("a denial of summary judgment is not a decision on the merits; it simply is a decision that there is a material factual issue to be tried.") (*citing* 10A Charles A. Wright, et al., *Fed. Prac. & Proc.* § 2712 (3d ed. 2002)).

[62] 11A Charles A. Wright, et al., Procedure on an Application for a Preliminary Injunction, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed.).

*it appears that nothing more is involved than an effort to invoke a second discretionary balancing of the same interests.*[63]

¶28     Here, CBM argues only that the prior preliminary injunction ruling should have preclusive effect as to a subsequent preliminary injunction proceeding. CBM does not argue that the prior preliminary injunction ruling should have any preclusive effect on consideration of the merits of the case at the final hearing. A decision is on the merits if it "permanently forecloses a party from further advancing a claim or defense."[64] Even if the decision does not actually resolve the underlying substantive issues, it may still be considered on the merits for the purposes of collateral estoppel.[65] A preliminary injunction is a final judgment on the merits (when appealed and affirmed or when not appealed) *of the limited issue presented by the preliminary injunction*—i.e., whether the plaintiffs can show likelihood of success on the merits, irreparable harm, and the other necessary factors.[66]

¶29     It is true that the "issue of ultimate fact" as to whether CBM breached the parties' Lease by leasing space to S&B has not yet been adjudicated, but the "limited issue" of whether Gourmet is entitled to a preliminary injunction *has* been adjudicated in Gourmet's prior Motion based on the same premises, facts and parties presented in Gourmet's instant Motion .

¶30     In considering the right to a preliminary injunction, Gourmet would have the court disregard the prior proceedings where Gourmet's preliminary injunction was denied. This

[63] 18A Charles A. Wright, et al., "On the Merits"—Discretionary or Limited Remedies, *Fed. Prac. & Proc. Juris* § 4445 (3d ed.)(emphasis added).

[64] *Stewart v. Virgin Islands Bd. of Land Use Appeals*, 66 V.I. 522, 533–34 (2017) (citing *Mitchell v. Chapman*, 343 F.3d 811, 821 (6th Cir. 2003) (internal quotation marks omitted)) ; *see Cassidy v. Brd. of Educ.*, 557 A.2d 227, 230 (Md. Ct. of Appeals 1989) ("Under the phrase 'on the merits,' we identify those judgments which should bar future litigation of the same claim." (citation omitted)).

[65] *Stewart v. Virgin Islands Bd. of Land Use Appeals*, 66 V.I. 522, 533–34 (2017); accord *Baumann v. Pub. Emps. Relations Bd.*, 68 V.I. 304, 341 (Super. Ct. 2018).

[66] *See Hawksbill Sea Turtle (Eretmochelys Imbricata) v. Fed. Emergency Mgmt. Agency*, 939 F. Supp. 1195, 1205–06 (D.V.I. 1996), *rev'd sub nom. Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 474, 476–478 (3d Cir. 1997) (" This court finds that the doctrine of issue preclusion prevents relitigation of the same factual issues previously resolved in a similar application for a preliminary injunction. . . .[F]indings made in granting or denying preliminary injunctions can have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again. . . . Whether the resolution in the first proceeding is sufficiently firm to merit preclusive effect turns on a variety of factors, including 'whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed.' Preclusion would seem to be particularly appropriate in a second action seeking the same injunctive relief.") (citations omitted); *see also Lyon Ford, Inc. v. Ford Mktg. Corp.*, 337 F. Supp. 691. 692 (E.D.N.Y. 1971) (finding the second request for a preliminary injunction -- based on the same facts as a prior preliminary injunction motion that had been denied -- to be precluded, "The New York rule of collateral estoppel forbids a party from litigating an issue a second time if it has been decided in a prior action where there was a full and fair opportunity to contest the matter.").

contention disregards the rule of collateral estoppel, which forbids a party from litigating an issue a second time if it has been decided in a prior action where there was a full and fair opportunity to contest the matter. Gourmet has had time and fair opportunity to present the facts, and no new substantive facts have been shown here.[67] The prior denial was valid, final and on the merits; Gourmet and CBM are the same parties in the prior action; and the claims arise out of the same alleged breach of contract.

¶31   Gourmet's two separate applications for injunctive relief derive from one factual scenario and boil down to the same wrong: plaintiffs allege that by allowing S&B to sell certain items, CBM breached the restrictive covenant within the parties' Lease Agreement. The fact that Gourmet's present action alleges additional violations and seeks different remedies does not affect or alter the facts and occurrences that underlie and support Gourmet's request for relief. Although the analysis could reasonably end here, the Court will address the preliminary injunction factors for the sake of completeness.[68]

## 1. Likelihood of Success on the Merits.

¶32   Gourmet argues that because this Court previously determined that Gourmet "demonstrated a reasonable probability of success on the merits,"[69] that the Court should make the same finding in the instant Motion. Gourmet argues "nothing impacting this Lease has occurred since the previous court's ruling,"[70] which may have been true at the time of filing, however, circumstances have since changed dramatically. CBM does not contest this factor and the Court has not yet conducted a trial on Gourmet's Second Amended Complaint. Given that little has changed in that regard, the Court finds Gourmet demonstrates a reasonable chance of success on the merits of its Complaint.[71]

---

[67] *See Hayes v. Ridge*, 946 F. Supp. 354, 364 (E.D. Pa. 1996).

[68] *See Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72, 73 (3d Cir. 2017) ("Courts considering whether to grant injunctive relief must exercise their equitable discretion in a case-by-case, fact specific manner. A critical aspect of fact-finding in this and other contexts is drawing reasonable inferences from facts in the record.").

[69] Mot. & Mem. Law Support Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 4. (June 6, 2017); *see also Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, No. ST-2014-CV-513, 2015 V.I. LEXIS 141, at *17 (Super. Ct. Nov. 10, 2015) ("In sum, it is uncontroverted that Plaintiffs and Defendant are parties to the Lease Agreement. Plaintiffs have introduced evidence that Defendant had an obligation to ensure that Gourmet Gallery retained exclusive rights to sell groceries in Crown Bay Marina, that Defendant breached that obligation, that Scoops & Brew does not fall under an exception to that obligation, and that Plaintiffs have been damaged as a result. Consequently, Plaintiffs have demonstrated a reasonable probability of success on the merits.").

[70] Mot. & Mem. Law Support Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 4 (June 6, 2017).

[71] *See Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017) ("Defining what constitutes a 'likelihood' of success on the merits has proven difficult. We have never required a court to assure itself with certainty that the moving party will ultimately prevail prior to granting preliminary injunctive relief. And we have held that a 'likelihood' does not mean more likely than not. On the other hand, the Supreme Court has advised that '[i]t is not

## 2. Irreparable Harm.

¶33     At the time of filing, Gourmet was still open and stated that without relief from the Court, it suffered irreparable injury to its business "both presently and into the future."[72] Gourmet argues that once S&B began selling items allegedly prohibited by the restrictive covenant within the Lease, its "traditional customer base was eroded"—it lost customers and the sales of those same items declined after S&B opened. [73] Without providing supporting documentation, Gourmet contends that S&B's sales of these "prohibited" items harmed Gourmet by impeding direct sales but also by eliminating the potential for greater sales once a customer entered Gourmet Gallery looking for specific items. Gourmet also contends that S&B's location gave it a strategic advantage over Gourmet Gallery.[74]

¶34     Countering, CBM argues that Gourmet's emergency motion is "predicated on lost sales," which may be fully remedied by an award of money damages in the event that its claims are found to have merit.[75] It further argues that the V.I. Supreme Court's decision denying Gourmet's previous motion for injunctive relief determined that Gourmet's alleged losses, if any, were curable with a monetary award and that in this most recent motion, the alleged irreparable harm is even more curable considering Gourmet closed its doors three months after filing its latest motion in 2017 and has not reopened since. [76] CBM also argues that Gourmet's "lost opportunity theory" is moot because of Gourmet Gallery's closure and because Gourmet has not submitted any additional evidence that would alter this Court's previous decision.

¶35     The Court agrees with CBM. "When the moving party's loss is a matter of simple mathematic calculation, [it] fails to establish irreparable injury for preliminary injunction purposes." [77] As was the case with Gourmet's initial Motion, the losses Gourmet claims are mathematically calculable in monetary terms, and as such are not irreparable injury for preliminary

---

enough that the chance of success on the merits be better than negligible[,]' and 'more than a mere "possibility" of relief is required.'") (internal quotations marks and citations omitted).

[72] Mot. & Mem. Law Support Emergency Mot. Issuance Prelim. Inj. & Permanent Inj. at 13 (June 6, 2017).

[73] *Id.* at 8. In support, Gourmet offers comparisons of its annual sales of alcohol, soda, and water, during years 2011 through 2015 compared to sales during 2016 after S&B opened. Gourmet also provided comparative sales figures for pre-packaged ice cream, juice, Red Bull, coffee beans, and candy. *Id.* at 8-14.

[74] *Id.* at 8.

[75] Def./Counterclaimant's Resp. Pls.' Second Request Ruling, Issuance Declaratory J., & Enforcement Orders Reply at 7 (Dec 10, 2021).

[76] Def.'s Resp. to Pl.'s Mot. Requesting Ruling on Pl.'s Emergency Mot. for Issuance of Prelim. Inj. & Permanent Inj. at 2. (December 18, 2018).

[77] *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 559-60 (2015) (citing *Yusuf v. Hamed*, 59 V.I. 841, 854 (2013) (citation, alteration, and internal quotation marks omitted).

injunction purposes.[78] Gourmet fails to cite a single authority in support of its conclusory assertion that the alleged harms are the type that money damages cannot adequately remedy after the conclusion of trial proceedings.[79] Without irreparable injury, the Court cannot grant a preliminary injunction.[80]

### 3. Balancing of Harms.

¶36   CBM did not argue to what extent the nonmoving party will suffer irreparable harm if an injunction is granted. [81] Gourmet did not establish irreparable harm in its previous Motion for Preliminary Injunction, and as discussed above, it fails to do so here. Given that CBM did not even attempt to argue this factor, it weighs in neither party's favor.

### 4. Public Interest.

¶37   "Public interest can be defined a number of ways for purposes of injunctive relief."[82] "While it is correct that the trial court should limit its inquiry to the last peaceable moment between the parties during the balancing-of-the-harms portion of the preliminary injunction test, public interest considerations extend to the time the trial court considers the motion. The reason for this is that while the balancing of the harms pertains to the relationship between parties, the public interest pertains to the relationship between the parties and the general public, including interested third parties."[83]

---

[78]*See Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584 (2018) ("For the purposes of a preliminary injunction, harm must be *certain* to be irreparable. Here, it is unclear whether S&B's operation has actually harmed Gourmet, or to what extent.") (citations omitted); *see also Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("[N]either the difficulty of calculating losses … nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial."); *see also Lyden v. Adidas Am., Inc.*, No. 3:14-CV-01586-MO, 2015 U.S. Dist. LEXIS 21004, at *8, 2015 WL 758642, *3 (D. Or. Feb. 20, 2015) (unpublished) (noting that "[a]lthough lost business opportunities can at times be irreparable" the moving party does not satisfy its burden by "merely recit[ing] [the] legal conclusion that the[ ] alleged lost opportunities are irreparable[ ]").

[79] *See 3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 559 (2015) (citing *Weisshaar*, 65 Vand. L. Rev. at 1018) ("[T]he basic purpose of a preliminary injunction is to protect the movant from irreparable injury that would occur before a full trial took place.") (citing also *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

[80] *See 3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 559-60 (2015) ("Without some showing of irreparable harm, injunctive relief is inappropriate.").

[81] *Yusuf v. Hamed*, 59 V.I. 841, 856 (2013).

[82] *Id.*

[83] *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584, 584 (2018).

¶38    Gourmet argues that "public interest favors honoring contracts and the terms contained therein," [84] however, as Gourmet itself acknowledges, "[n]either the Superior court nor the [V. I.] Supreme Court ruled on Gourmet Gallery's underlying claim – whether the lease between the parties grants Gourmet Gallery the exclusive right to sell grocery items in the Marina, and how the term 'grocery' should be defined."[85] Furthermore, Gourmet Gallery has been closed for the past six years. Clearly, the public interest is best served by permitting S&B to freely operate its business at the Marina under these circumstances.

¶39    After evaluation of the required factors, the Court finds the instant Motion presents the same issues of law and fact that were conclusively determined in Gourmet's previous Motion for injunctive relief.[86] The Court finds 1) identical issues of injunctive relief were presented in the previous and instant Motions, (2) the prior judgment denying preliminary injunction was valid, final, and on the merits; (3) the parties in the subsequent instant action are identical to the parties in the prior action; and (4) Gourmet had a full and fair opportunity to litigate the issue in the prior action. As such, collateral estoppel bars the Court from granting Gourmet a preliminary injunction in the matter at bar.

## IV.    CONCLUSION.

¶40    For reasons discussed above, the Court finds that Gourmet's instant motion is barred by the doctrine of collateral estoppel, and, in addition, Gourmet fails to meet the standard under V.I. Rule Civ. P. 65 for injunctive relief. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion and Memorandum of Law in Support of Emergency Motion for Issuance of a Preliminary Injunction and a Permanent Injunction, filed June 6, 2017, is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Motion Requesting Ruling on Plaintiffs' Emergency Motion for Issuance of a Preliminary Injunction and Permanent Injunction, filed December 3, 2018, is **DENIED**; and it is further

---

[84] Mot. & Mem. Law in Support of Emergency Mot. for Issuance of Prelim. Inj. & Permanent Inj. at 16 (June 6, 2017).
[85] Pls.' Reply Def.'s Resp. Pls.' Mot. Requesting Ruling Pls.' Emergency Mot. Issuance of Prelim. Inj. & Permanent Inj. at 2 ( Jan. 3, 2019).
[86] *Id.*

*Gourmet Gallery Crown Bay, Inc., et al. v. Crown Bay Marina, L.P.*
**Case No. ST-2014-CV-00513**
**Memorandum Opinion and Order**
**Page 18 of 18**

24 VI Super 13U

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to Attorneys Campbell C. Rhea, Gordon C. Rhea, Joseph Arellano, Adam N. Marinelli and Ravinder Nagi.

DATED: **3|15|2024**

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor 3/18/2024

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
March 19, 2024 08:09 AM
ST-2014-CV-00513
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
District of St. Thomas/St. John

---

**Gourmet Gallery Crown Bay, Inc. and Zakaria Suid**
             **Plaintiffs,**

v.

**Crown Bay Marina, L.P.,**
                    **Defendant.**

**Crown Bay Marina, L.P.,**
          **Counterclaimant,**

v.

**Gourmet Gallery Crown Bay, Inc., and Zakaria Suid,**
     **Counterclaim Defendants.**

Case Number: **ST-2014-CV-00513**
Action: **Declaratory Judgment**

# NOTICE of ENTRY
## of
## <u>Order</u>

**To:**   Joseph B. Arellano, Esq.,
          Gordon C. Rhea, Esq.,
          Campbell Collin Rhea, Esq.

          Ravinder S. Nagi, Esq.,
          Adam N. Marinelli, Esq.

**Please take notice that on March 19, 2024
a(n)                 Memorandum Opinion Order
dated          March 15, 2024          was/were entered
by the Clerk in the above-titled matter.**

**Dated:   March 19, 2024**

                                          **Tamara Charles**
                                          **Clerk of the Court**

                            By:

                                          **Elizabeth A. David**
                                          **Chief Deputy Clerk**